1    WO

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                        **FOR THE DISTRICT OF ARIZONA**

8

9    Charles Monte Reese,                    No. CV-11-00843-TUC-CRP

10                    Petitioner,             **ORDER**

11   v.

12   Charles L. Ryan, et al.,

13                    Respondents.

14         Petitioner Charles Monte Reese, through counsel, has filed a Petition for Writ of

15   Habeas Corpus pursuant to 28 U.S.C. § 2254. Before this Court are the Petition and

16   accompanying Appendix[1] (Doc. 1), Respondents' Answer with accompanying Exhibits[2]

17   (Doc. 9), and Petitioner's Reply (Doc. 12). The parties consented to exercise of

18   jurisdiction by a Magistrate Judge, pursuant to 28 U.S.C. § 636(c)(1). (Doc. 13.) The

19   Court finds that the Petition should be denied and dismissed with prejudice.

20   **I.      Factual and Procedural Background**

21         Petitioner Charles Reese was driving his car while under the influence of alcohol

22   in the early morning of March 2005 and struck the victim, who was riding a motorcycle.

23   App. 2 at 1-2.[3] Petitioner's blood alcohol concentration was .205 percent. *Id*. The victim

24   ────────────────

25         [1] All appendices cited in this Order refer to the Appendix ("App.") attached to the
     Petition.

26

27         [2] All exhibits cited in this Order refer to the Exhibits ("Exs.") attached to the
     Answer.

28         [3] These facts are drawn from the Arizona Court of Appeals memorandum
     decision. The Court presumes the correctness of the Arizona court's findings unless

died the next day. *Id*. Petitioner was arrested and charged with second degree murder, criminal damage, driving while under the influence of liquor, driving with an alcohol concentration of .08 or more, and driving while under the extreme influence of intoxicating liquor. App. 1, Indictment. On February 16, 2006, Petitioner entered a plea to manslaughter, a class two felony and dangerous-nature offense. Ex. A; App 1, Minute Entry 2/16/06. After a sentencing hearing at which the victim's family and friends spoke, the trial court sentenced Petitioner to a partially-aggravated term of 16 years' imprisonment. App. 1 at 8-11; App. 4. The trial court identified Petitioner's lack of a felony criminal history; remorse; involvement in counseling and alcohol abuse treatment since the accident; compliance with conditions of release; and family and community support as mitigating factors. App. 1, at 9. As aggravating factors the court identified the emotional and financial harm to the victim's survivors; the danger Petitioner posed and continues to pose to the community; Petitioner's blood alcohol level of .20 percent at the time of the accident; Petitioner's prior DUI conviction; and Petitioner's acknowledgment of an alcohol problem while continuing to drink and drive. *Id*.

On September 10, 2008, Petitioner filed an amended notice of post-conviction relief pursuant to Rule 32, Arizona Rules of Criminal Procedure. Ex. B. Petitioner had apparently filed an earlier notice, on June 5, 2007, which had not been acted upon by the trial court. *See id.* On April 1, 2010, Petitioner, through counsel, filed a petition for post-conviction relief (PCR), claiming that the trial court violated his due process rights at sentencing, his trial counsel was ineffective for failing to investigate the victim's use of a helmet, counsel was ineffective at sentencing, and newly discovered evidence. App. 1-A. The trial court summarily denied the PCR. App. 1-C.

Petitioner sought review of the trial court's denial of post-conviction relief by the Arizona Court of Appeals. Ex. D. The appellate court granted review but denied relief in a memorandum decision filed on March 30, 2011. App. 2. Petitioner sought review of

---

rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). *See also Dickens v. Ryan*, 740 F.3d 1302, 1306 n.2 (9th Cir. 2014).

1    that decision by the Arizona Supreme Court. Ex. E. On September 6, 2011, that court

2    denied review. Ex. F.

3          Petitioner filed the instant Petition on December 28, 2011. Petitioner raises five

4    issues:  (1) ineffective assistance of counsel ("IAC") for  failing to investigate;  (2)

5    ineffective assistance of counsel for failing to provide a risk/benefit analysis concerning

6    Petitioner's plea offer; (3) ineffective assistance of counsel failing to present mitigating

7    evidence at sentencing; (4) a violation of Petitioner's constitutional rights of due process

8    and confrontation through the unsworn testimony of witnesses at sentencing; and (5) the

9    trial court's violation of Petitioner's due process rights by imposition of an aggravated

10   sentence. Petition at 6.

11   **II.**   **Discussion**

12       A.   Standard of Review

13         Because Reese filed his petition after April 24, 1996, this case is governed by the

14   Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254(d) ("AEDPA").

15   *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997) (holding that AEDPA governs federal

16   habeas petitions filed after the date of its enactment, April 24, 1996).

17       B.   Timeliness

18         Under the AEDPA, a state prisoner must generally file a petition for writ of habeas

19   corpus within one year from "the date on which the judgment became final by the

20   conclusion of direct review or the expiration of time for seeking such review[.]"  28

21   U.S.C. § 2244(d)(1)(A). "The time during which a properly filed application for state

22   post-conviction or other collateral review with respect to the pertinent judgment or claim

23   is pending shall not be counted toward any period of limitation[.]" 28 U.S.C. §

24   2244(d)(2).

25         Petitioner had until one year after his conviction and sentence became final to file

26   his federal petition. Respondents do not contest the timeliness of the Petition. Upon

27   review of the state-court record, the Court finds that, pursuant to the AEDPA, the Petition

28

is timely.[4]

### C.   Procedural Default

Respondents assert that Ground Two of the Petition, an IAC claim asserting trial counsel failed to advise Petitioner of the risks and benefits of accepting the State's plea offer, is procedurally defaulted because Petitioner did not fairly present the claim to the state courts. Answer at 10. Petitioner responds that the issue was raised in Petitioner's petition for review to the Arizona Court of Appeals as a component of Petitioner's IAC claim. Reply, at 2, citing Ex. D, at 15-17.

A writ of habeas corpus may not be granted unless it appears that a petitioner has exhausted all available state court remedies. 28 U.S.C. § 2254(b)(1); *see also Coleman v. Thompson*, 501 U.S. 722, 731 (1991). To exhaust state remedies, a petitioner must "fairly present" the operative facts and the federal legal theory of his claims to the state's highest court in a procedurally appropriate manner. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999); *Anderson v. Harless*, 459 U.S. 4, 6 (1982); *Picard v. Connor*, 404 U.S. 270, 277–

---

[4] Though not raised by the State, Petitioner's conviction arguably became final ninety-days after his sentencing when he failed to timely commence a post-conviction relief proceeding by filing a notice of post-conviction relief. *See* Rule 32.1, Arizona Rules of Criminal Procedure (person who pleads guilty shall have the right to file a post-conviction relief proceeding, known as a "Rule 32 of-right proceeding."); Rule 32.4, Arizona Rules of Criminal Procedure (notice of PCR must be filed within ninety days after the entry of judgment and sentence). Thus, the limitations period would have commenced running on May 17, 2006, and the time for filing a federal petition would have expired, absent tolling, on May 17, 2007. *See* 28 U.S.C. § 2244(d)(1)(A). If, however, a state court grants a defendant the right to file an out-of-time direct appeal, "before the defendant has first sought federal habeas relief, his judgment is not yet 'final' for purposes of § 2244(d)(1)(A)." *Jimenez v. Quarterman*, 555 U.S. 113, 121 (2009) (out-of-time appeal granted during state collateral review process). In such a case, the limitations period is essentially reset, as finality occurs at "the conclusion of the out-of-time direct appeal, or the expiration of the time for seeking review of that appeal." *Id.* In Arizona, an "of-right" petition for post-conviction relief from a pleading defendant is "the counterpart of a direct appeal." *See State v. Pruett*, 185 Ariz. 128, 130-131 (App. 1995); *State v. Petty*, 225 Ariz. 369, 372 (App. 2010). Thus, by granting review of the petition for post-conviction relief, Petitioner's conviction was "again capable of modification" through further review. *See Jimenez*, 555 U.S. at 120. Accordingly, the Court finds, as Respondents suggest, that Reese's conviction did not become final until ninety days following the conclusion of his "of-right" PCR proceedings, or on December 5, 2011. *Cf. Thompson v. Lea*, 681 F.3d 1093, 1094 (9th Cir. 2012). (Petitioner's conviction remains nonfinal during the pendency of reopened appeal and becomes final ninety days after the California Supreme Court dismissed review on the merits.) Because Petitioner filed the instant Petition on December 28, 2011, it is timely.

78 (1971).

"To exhaust one's state court remedies in Arizona, a petitioner must first raise the claim in a direct appeal or collaterally attack his conviction in a petition for post-conviction relief pursuant to Rule 32." *Roettgen v. Copeland*, 33 F.3d 36, 38 (9th Cir. 1994). The failure to exhaust subjects the petitioner to dismissal. *Gutierrez v. Griggs*, 695 F.2d 1195 (9th Cir. 1983).

A habeas petitioner's claims may be precluded from federal review in two ways. First, a claim may be procedurally defaulted in federal court if it was actually raised in state court but found by that court to be defaulted on state procedural grounds. *Coleman*, 501 U.S. at 729–30. Second, a claim may be procedurally defaulted if the petitioner failed to present it in state court and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Coleman*, 501 U.S. at 735 n. 1; *see also Ortiz v. Stewart*, 149 F.3d 923, 931 (9th Cir. 1998) (stating that the district court must consider whether the claim could be pursued by any presently available state remedy). If no remedies are currently available pursuant to Rule 32, the claim is "technically" exhausted but procedurally defaulted. *Coleman*, 501 U.S. at 732, 735 n. 1; *see also Gray v. Netherland,* 518 U.S. 152, 161-62 (1996).

In Arizona, claims not previously presented to the state courts on either direct appeal or collateral review are generally barred from federal review because any attempt to return to state court to present them would be futile unless the claims fit into a narrow range of exceptions. *See* Ariz.R.Crim.P. 32.1(d)-(h), 32.2(a) (precluding claims not raised on direct appeal or in prior post-conviction relief petitions), 32.4(a) (time bar), 32.9(c) (petition for review must be filed within thirty days of trial court's decision). Because these rules have been found to be consistently and regularly followed, and because they are independent of federal law, either their specific application to a claim by an Arizona court, or their operation to preclude a return to state court to exhaust a claim, will procedurally bar subsequent review of the merits of such a claim by a federal habeas court. *Stewart v. Smith*, 536 U.S. 856, 860 (2002); *Ortiz*, 149 F.3d at 931–32 (finding

Rule 32.2(a)(3) regularly followed and adequate).

Because the doctrine of procedural default is based on comity, not jurisdiction, federal courts retain the power to consider the merits of procedurally defaulted claims. *Reed v. Ross*, 468 U.S. 1, 9 (1984). However, the Court will not review the merits of a procedurally defaulted claim unless a petitioner demonstrates legitimate cause for the failure to properly exhaust the claim in state court and prejudice from the alleged constitutional violation, or shows that a fundamental miscarriage of justice would result if the claim were not heard on the merits in federal court. *Coleman*, 501 U.S. at 750.

Cause is defined as a "legitimate excuse for the default," and prejudice is defined as "actual harm resulting from the alleged constitutional violation." *Thomas v. Lewis*, 945 F.2d 1119, 1123 (9th Cir. 1991); *see Murray v. Carrier*, 477 U.S. 478, 488 (1986) (a showing of cause requires a petitioner to show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule"). Prejudice need not be addressed if a petitioner fails to show cause. *Thomas*, 945 F.2d at 1123 n.10. To bring himself within the narrow class of cases that implicate a fundamental miscarriage of justice, a petitioner "must come forward with sufficient proof of his actual innocence" *Sistrunk v. Armenakis*, 292 F.3d 669, 672-73 (9th Cir. 2002) (internal quotation marks and citations omitted), which can be shown when "a petitioner 'presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" *Id.* at 673 (quoting *Schlup v. Delo*, 513 U.S. 298, 316 (1995)).

Petitioner correctly asserts that he raised the issue of counsel failing to advise him on the risks and benefits of the plea offer in his petition for review from the trial court's denial of his PCR. *See* Ex. D, at 15-17. The risk and benefit issue, however, was not plainly raised to the trial court as an IAC claim. Petitioner did not argue that counsel failed to advise him of the risks and benefits of the plea offer in his PCR, though he did raise the issue that counsel was ineffective for failing to investigate the fact that the victim was under the influence of alcohol at the time of the accident and the victim's failure to wear a helmet. *See* App 1-A, at 19. Petitioner asserted that this undiscovered

information was necessary "so that a reasonable determination of whether to proceed to trial or enter a plea was warranted." *Id.* at 19, 22-23. Petitioner now asserts that Ground Two is exhausted because he properly argued the voluntary and intelligent nature of his plea by showing counsel's deficient advice detrimentally affected Petitioner's decision. *See* Reply, at 3. Asserting that Petitioner was not reasonably informed of the facts necessary, upon reasonable investigation, to make a knowing and voluntary plea is not the factual or legal equivalent of an assertion that Petitioner was never advised by counsel of the risks and benefits, or in other words, the adverse and favorable consequences, of entering into the plea agreement. The latter assertion was not raised in Petitioner's PCR.[5]

Importantly, exhaustion requires properly raising and fairly presenting a claim at every appropriate state court level. *See Casey v. Moore*, 386 F.3d 896, 915–16 (9th Cir. 2004). In Arizona, a PCR petition must present every known ground for relief. Ariz. R.Crim. P. 32.5. Further, a petition for review from denial of a PCR petition in Arizona is a forum to request relief from the PCR court's actions, not to raise new claims. Ariz. R.Crim. P. 32.9(c). Therefore, raising claims for the first time to the appellate court was insufficient to fairly present any claims to the Arizona state courts.

Ground Two was not fairly presented to the Arizona state courts. If Petitioner were to return to state court now to litigate these claims, they would be found waived and untimely under Rules 32 .2(a)(3) and 32.4(a) of the Arizona Rules of Criminal Procedure because they do not fall within an exception to preclusion. Ariz. R.Crim. P. 32.2(b); 32.1(d)-(h). Therefore, Ground Two is technically exhausted but procedurally defaulted. Petitioner has not alleged cause and prejudice or a fundamental miscarriage of justice to overcome these defaults. *See Coleman*, 501 U.S. at 750. Accordingly, the Court dismisses

---

[5] Petitioner did assert in his reply to the state's response to his PCR that he was unable to properly conduct a risk-benefit analysis of the plea offer because he was never informed that he was realistically facing the same amount of time in prison as if he had gone to trial. *See* App 1-B, at 6. However, an issue or claim raised for the first time in a reply brief is deemed waived under Arizona law. *See, e.g., State v. Pena*, 209 Ariz. 504, 506 (App. 2005); *Westin Tucson Hotel Co. v. Ariz. Dep't of Revenue*, 188 Ariz. 360, 364 (App. 1987). The superior court never accepted or addressed the waived claim nor did the Arizona Court of Appeals. Petitioner cannot be said to have "fairly presented" a federal constitutional claim to the state courts in his reply brief.

1  this claim.

2          D.      Merits

3          The AEDPA established a "substantially higher threshold for habeas relief" with

4  the "acknowledged purpose of 'reduc[ing] delays in the execution of state and federal

5  criminal sentences.'" *Schriro v. Landrigan*, 550 U.S. 465, 473-74 (2007) (quoting

6  *Woodford v. Garceau*, 538 U.S. 202, 206 (2003)). The AEDPA's " 'highly deferential

7  standard for evaluating state-court rulings' . . . demands that state-court decisions be

8  given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per*

9  *curiam*) (quoting *Lindh*, 521 U.S. at 333 n. 7).

10          Under the AEDPA, a petitioner is not entitled to habeas relief on any claim

11  "adjudicated on the merits" by the state court unless that adjudication:

12          (1) resulted in a decision that was contrary to, or involved an unreasonable
                application of, clearly established Federal law, as determined by the
13              Supreme Court of the United States; or

14          (2) resulted in a decision that was based on an unreasonable determination
15              of the facts in light of the evidence presented in the State court
16              proceeding.

17  28 U.S.C. § 2254(d). The last relevant state court decision is the last reasoned state

18  decision regarding a claim. *Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005).

19  Where the last reasoned state court decision adopted or substantially incorporated the

20  reasoning from a previous decision, it is permissible to look at both decisions to fully

21  ascertain the reasoning of the last decision. *Barker*, 423 F.3d at 1093; *see also Weaver v.*

22  *Palmateer*, 455 F.3d 958, 963 n.5 (9th Cir. 2006); *Lewis v. Lewis*, 321 F.3d 824, 829 (9th

23  Cir. 2003). Here, the Arizona Court of Appeals substantially incorporated the reasoning

24  from the trial court's ruling on the claims in Petitioner's PCR. *See* Ex. D, at 2-3.

25  Accordingly, the Court looks to the trial court's ruling (App. 1-C) to ascertain whether

26  the decision was contrary to, or involved an unreasonable application of, clearly

27  established Federal law, or resulted in a decision that was based on an unreasonable

28  determination of the facts in light of the evidence presented in the State court proceeding.

- 8 -

Where "no state-court decision furnishes a basis for the state court's underlying reasoning," the Court must "engage in an 'independent review of the record' and ascertain whether the state court's decision was 'objectively unreasonable,' " *Murray,* , 745 F.3d at 996–97 (quoting *Walker v. Martel*, 709 F.3d 925, 939 (9th Cir. 2013)).

"The threshold question under AEDPA is whether [the petitioner] seeks to apply a rule of law that was clearly established at the time his state-court conviction became final." *Williams v. Taylor*, 529 U.S. 362, 390 (2000). Therefore, to assess a claim under subsection (d)(1), the Court must first identify the "clearly established Federal law," if any, that governs the sufficiency of the claims on habeas review. "Clearly established" federal law consists of the holdings of the Supreme Court at the time of the relevant state-court decision. *Williams*, 529 U.S. at 365; *see Carey v. Musladin*, 549 U.S. 70, 74 (2006). Habeas relief cannot be granted if the Supreme Court has not "broken sufficient legal ground" on a constitutional principle advanced by a petitioner, even if lower federal courts have decided the issue. *Williams*, 529 U.S. at 381; *see Musladin*, 549 U.S. at 76-77; *Casey*, 386 F.3d at 907. Nevertheless, while only Supreme Court authority is binding, circuit court precedent may be "persuasive" in determining what law is clearly established and whether a state court applied that law unreasonably. *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003).

The Supreme Court has provided guidance in applying each prong of § 2254(d)(1). The Court has explained that a state court decision is "contrary to" the Supreme Court's clearly established precedents if the decision applies a rule that contradicts the governing law set forth in those precedents, thereby reaching a conclusion opposite to that reached by the Supreme Court on a matter of law, or if it confronts a set of facts that is materially indistinguishable from a decision of the Supreme Court but reaches a different result. *Williams*, 529 U.S. at 405-06; *see Early v. Packer*, 537 U.S. 3, 8 (2002) (*per curiam*). In characterizing the claims subject to analysis under the "contrary to" prong, the Court has observed that "a run-of-the-mill state-court decision applying the correct legal rule to the facts of the prisoner's case would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause." *Williams*, 529 U.S. at 406; *see Lambert v. Blodgett*,

393 F.3d 943, 974 (9ᵗʰ Cir. 2004).

Under the "unreasonable application" prong of § 2254(d)(1), a federal habeas court may grant relief where a state court "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular . . . case" or "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407. For a federal court to find a state court's application of Supreme Court precedent "unreasonable," the petitioner must show that the state court's decision was not merely incorrect or erroneous, but "objectively unreasonable." *Id.* at 409; *Landrigan*, 550 U.S. at 473; *Visciotti*, 537 U.S. at 25. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, ——, 131 S. Ct. 770, 786 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In conducting review under § 2254(d)(1), this Court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, ——U.S. ——, 131 S.Ct. 1388, 1398–99 (2011).

Under the standard set forth in § 2254(d)(2), habeas relief is available only if the state court decision was based on an unreasonable determination of the facts. *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (*Miller-El II*). A state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. 322, 340 (2003) (*Miller-El I*); *see Taylor v. Maddox*, 366 F.3d 992, 999 (9ᵗʰ Cir. 2004), *limited on other grounds by Murray v. Schriro,* 745 F.3d 984 (9ᵗʰ Cir. 2014). In considering a challenge under § 2254(d)(2), state court factual determinations are presumed to be correct, and a petitioner bears the "burden of rebutting this presumption by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Landrigan*, 550 U.S. at 473-74; *Miller-El II*, 545 U.S. at 240.

### 1.     *Ineffective Assistance of Counsel Claims*

To prevail on a claim of ineffective assistance of counsel, Petitioner must satisfy two separate requirements: he must (1) show that counsel's performance fell below objective standards of reasonableness and "outside the wide range of professionally competent assistance", and (2) establish that counsel's performance prejudiced Petitioner by creating "a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Strickland v. Washington*, 466 U.S. 668, 687–94 (1984); *see also Williams,* 529 U.S. at 390; *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986). *Strickland* is the clearly established law for ineffective assistance of counsel claims. *See Richter*, 556 U.S. at ——, 131 S.Ct. at 780.

The inquiry under *Strickland* is highly deferential, and "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. Thus, to satisfy *Strickland's* first prong, deficient performance, a defendant must overcome "the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.*

Because an IAC claim must satisfy both prongs of *Strickland*, the reviewing court "need not first determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Id.* at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed"). A petitioner must affirmatively prove prejudice. *Id.* at 693. To demonstrate prejudice, he must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Petitioner "must show that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Bell v. Cone*, 535 U.S. 685, 698-99 (2002).

### a.    Ground One

Petitioner argues that trial counsel was ineffective for failing to properly investigate the case. Petitioner contends that counsel retained by his family to represent him, Ivan Abrams, abandoned the case with attorney Jack L. Lansdale, Jr., "in a position, unbeknownst to Mr. Lansdale at that time, that no investigation had been done in the case." Petition at 6. Petitioner further contends that Mr. Lansdale was left with the impression that "everything necessary had been completed" with the exception of having Petitioner enter into the plea offered by the State. (*Id.*) Additionally, Petitioner asserts that Mr. Abrams "affirmatively told the Petitioner that if he were to enter into a plea, he would not be sentenced to more than seven years in prison." (*Id.* at 10.)

In Petitioner's PCR proceeding, the trial court made several determinations regarding Petitioner's claim that counsel was ineffective for failing to properly investigate the case. First, the court found that, with regard to Mr. Lansdale, his failure to investigate did not constitute ineffective assistance because of the fact that he received the case two weeks before the plea was accepted and a little more than a month before the firm trial date and he "simply had no time to conduct such investigation before trial." App 1-C, at 6. Second, accepting the assertion that Mr. Abrams had conducted no meaningful investigation into the case as true, for purposes of the court's analysis, the court found that Mr. Abrams' actions in not fully investigating and presenting evidence of the fact that the victim was not wearing a helmet represented a tactical decision. *Id.* Finally, the court reviewed the accident reconstructionist's report attached to the PCR and found that the alleged failure to investigate did not cause any prejudice to Petitioner because it "does nothing to indicate that Petitioner would not have been found guilty if he had that information at his disposal before accepting the plea." *Id.* The court explained that the fact the victim might have lived had he been wearing a helmet did not change the fact that Petitioner was "driving under the influence when he collided with the victim's motorcycle, sent him flying to his death, and fled the scene." *Id.* "The Petitioner still recklessly caused the death of another, which is all the State had to prove to convict him of Manslaughter." *Id.* The court of appeals adopted this ruling. App. 2 at 2-3.

Petitioner now asserts that the trial court erred in resolving this issue by failing to refer to the affidavits from him[6] and his parents that were attached to the PCR. Petition at 8. In its ruling, however, the trial court accepted as true, for purposes of the court's *Strickland* analysis, the assertions contained in the affidavits from Petitioner's parents and Mr. Lansdale that Mr. Abrams conducted no "meaningful investigation" into the case. *See* App. 1-C at 6; App. 1-AA, Ex. 1, Affidavit of Jack L. Lansdale, Jr., ¶ 2; App. 1-AA, Ex. 2, Affidavit of Monte K. Reese and Tammy S. Reese, ¶ 3. Nonetheless, the trial court found counsel's decision to forego further investigation "tactical," and, upon review of the report from the accident reconstructionist, concluded that the failure to investigate did not prejudice Petitioner.

In the context of guilty pleas, the prejudice requirement "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea

---

[6] There was no affidavit from Petitioner attached to the PCR. *See* App. 1-AB. Petitioner did attach an affidavit to his reply. *See* App. 1-B, Ex. 1. Petitioner's assertion in his affidavit regarding counsel's performance that "Ivan Abrams failed to fully investigate the nature of the accident which included the back tail light of the motorcycle ridden by the victim/deceased" is substantially similar to the statements contained in the affidavits obtained from Petitioner's parents and Mr. Lansdale.

Although Petitioner asserts that he "clearly argued" that "counsel incorrectly advised Petitioner that if he accepted the plea offer, he would not be sentenced to more than seven years" (*see* Reply, at 5), Petitioner did not present this argument in his PCR, but only alluded to these facts in his affidavit attached to his reply. *See* App. 1B, Ex. 1. Thus, this issue was not properly presented to the state courts and has been procedurally defaulted. Nonetheless, this claim fails on the merits as well, because Petitioner does not assert that Mr. Lansdale did not inform him of the sentencing range he was facing if he accepted the plea, or that at the time he entered the plea he did not understand the range of sentence he was exposed to as a result of accepting the plea agreement, which Petitioner signed and which clearly set forth the sentencing range (*see* Ex. A); thus he has failed to demonstrate how he was prejudiced as a result of the information provided to him by his former counsel, Mr. Abrams. *See id.*, ¶ 8 (avowing that "at the outset of the case" Petitioner was told that he "would do" approximately seven years).

Petitioner additionally argues in the Reply that he has avowed that Mr. Lansdale told him the court indicated that Petitioner would not be sentenced to more than twelve years in prison, citing Petitioner's affidavit attached to his reply in the PCR proceedings (App. 1B, Ex. 1). Petitioner, however, did not properly present this claim to the state courts, and this Court will not address new grounds for relief raised for the first time in a reply brief. *Delgadillo v. Woodford,* 527 F.3d 919, n. 4 (9th Cir.2008) ("Arguments raised for the first time in petitioner's reply brief are deemed waived.") (citing *Burlington N. & Santa Fe Ry. Co. v. Vaughn,* 509 F.3d 1085, 1093 n. 3 (9th Cir. 2007)). Moreover, such claim raised for the first time in Petitioner's reply brief would be untimely.

- 13 -

process." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). A defendant may satisfy the prejudice prong by showing that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Id*, at 52, 58. Whether a petitioner can prevail on a claim of ineffective assistance of counsel for failure to investigate a potential defense depends in large part on whether the potential defense "likely would have succeeded at trial." *Id.* at 59; *see Lambert*, 393 F.3d at 982 ("Where the alleged error is counsel's failure to investigate a potential defense, the salient inquiry is whether discovery of the evidence would have led counsel to change his recommendation as to the plea. In turn, the result of this inquiry may depend on whether the defense would have likely succeeded at trial.")(internal quotation marks, brackets and citation omitted). As Respondents correctly assert, Petitioner fails to identify any information that would have been uncovered with additional pretrial investigation, much less explain how any such information would have impacted his case. *See generally* Petition at 8–10. Petitioner apparently concludes that if he had possessed other unidentified information, he would have rejected the State's plea offer and proceeded to trial; however, without identifying any evidence or information that was allegedly available but undiscovered by trial counsel, Petitioner's conclusion is speculation. *See, e.g.*, *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989) ("A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial.") Because Petitioner has failed to identify any information that could have been uncovered, Petitioner necessarily cannot discharge his "heavy burden" of proving prejudice, *i.e.* that the outcome of his case would have been any different. *Green*, 882 F.2d at 1003. Accordingly, Petitioner has failed to demonstrate a *Strickland* violation. *Strickland*, 466 U.S. at 690–95. Because Petitioner has failed to demonstrate prejudice, there is no need to inquire into counsel's performance. *Id.* Petitioner's conclusory allegations fail to substantiate his claim of ineffective assistance of counsel during the plea proceedings. The state court's decision was neither contrary to, nor an unreasonable application of *Strickland*. Nor was the state court's decision based on an unreasonable

determination of the facts in light of the evidence presented in the state court proceeding. Habeas relief on Ground One is denied.

### b.      Ground Three

Petitioner argues that trial counsel was ineffective for failing to present mitigating evidence at sentencing. Petition at 12-18. The Ninth Circuit has held that the Supreme Court has "not delineated a standard which should apply to ineffective assistance of counsel claims in noncapital sentencing cases[,][and] [t]herefore, [...] there is no clearly established federal law as determined by the Supreme Court in this context." *Davis v. Grigas*, 443 F.3d 1155, 1158 (9th Cir. 2006) (citing *Cooper-Smith v. Palmateer*, 397 F.3d 1236, 1244 (9th Cir. 2005)). The *Strickland* Court "expressly declined to 'consider the role of counsel in an ordinary sentencing, which ... may require a different approach to the definition of constitutionally effective assistance.' " *Cooper-Smith*, 397 F.3d at 1244 (quoting *Strickland*, 466 U.S. at 686)).

Contrary to the conclusion reached by the Ninth Circuit in *Davis* and *Cooper-Smith*, it appears that the Supreme Court has applied the *Strickland* standard to noncapital sentencing proceedings. In a recent decision, the Supreme Court stated that *Strickland* prejudice can occur at sentencing. *See Lafler v. Cooper*, ——U.S. ——, 132 S.Ct. 1376, 1385-86 (2012) ("[t]he precedents ... establish that there exists a right to counsel during sentencing in both noncapital ... and capital cases....")(citing, *inter alia*, *Glover v. United States*, 531 U.S. 198, 203–04 (2001); *see also Gonzalez v. Knowles*, 515 F.3d 1006, 1014–16 (9th Cir. 2008) (applying *Strickland* and concluding that counsel was not ineffective for failing to investigate mitigating evidence of mental illness and for not calling family members to testify on his behalf at sentencing). This Court, however, is bound by *Davis* and *Cooper-Smith* until they are reversed *en banc* or by the Supreme Court. *Hart v. Massanari*, 266 F.3d 1155, 1171 (9th Cir. 2001). Because there is no clearly established federal law in this context, Petitioner is not entitled to habeas relief under 28 U.S.C. § 2254(d)(1) with respect to these claims. *See Cooper-Smith,* 397 F.3d at 1244.

Moreover, even assuming that the *Strickland* standard governs claims that counsel

was ineffective in the context of a noncapital sentencing proceeding, Petitioner cannot prevail on his claim. In resolving Petitioner's claims, the state court applied *Strickland*. The Ninth Circuit has stated that "even though the *Strickland* standard does not by necessity apply to the noncapital sentencing context, the [state] courts were nonetheless free to adopt that standard for use in this context." *Davis*, 443 F.3d at 1158. The state court's ruling was not an unreasonable application of *Strickland*, nor was the state court's decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

In his PCR, Petitioner submitted an affidavit from his sentencing counsel which stated that counsel acknowledged that he should have requested a continuation of the sentencing proceeding because the nature of the proceeding was very prejudicial to Petitioner and with a continuance he "could have prepared mitigation to present to the court by having a mitigation specialist work with my client and his family, and [] would have presented exhibits and live testimony to show the court the type of person that Mr. Reese really is." App. 1-AB, Lansdale Affidavit, ¶ 6. The state court concluded that counsel's performance did not constitute deficient performance, noting that counsel was effective in regards to submitting written letters, a sentencing memorandum, and the pre-sentence report to attempt to mitigate Petitioner's sentence, remarking that the court found a number of mitigating factors including Petitioner's family and community support. App. 1-C, at 6. Additionally, the state court concluded that Petitioner had not shown that his sentence would have been different if counsel had presented the mitigating factors orally in court. *Id*.

At the outset, the trial court's ruling suggests that the court erroneously applied the prejudice prong of the *Strickland* standard in determining whether any error by counsel prejudiced Petitioner. To establish prejudice, a prisoner must demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *Id*. "[T]he question is not whether a court can be certain counsel's performance had no effect on the outcome."

*Richter*, 562 U.S. at ——, 131 S. Ct. at 791. Thus the state post-conviction court wrongly held Petitioner to a higher standard by apparently requiring Petitioner to demonstrate that counsel's deficient performance "would have" changed his sentence, rather than a "reasonable probability" that the sentence would have been different absent error by counsel. *See Strickland*, 466 U.S. at 694.

Regarding the performance prong, a reviewing court engages a strong presumption that counsel rendered adequate assistance, and exercised reasonable professional judgment in making decisions. *See id.* at 690. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. Moreover, review of counsel's performance under *Strickland* is "extremely limited": "The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial." *Coleman v. Calderon*, 150 F.3d 1105, 1113 (9th Cir.), *rev'd on other grounds*, 525 U.S. 141 (1998). Thus, a court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 690.

First, the Court reviews the state courts' factual finding that trial counsel made a strategic decision and assesses whether that finding was objectively unreasonable. *See Wood v. Allen*, 558 U.S. 290, 301 (2010) (citing 28 U.S.C. § 2254(d)(2)). Petitioner asserts that the affidavit submitted by Mr. Lansdale to the trial court demonstrates that the decision not to call witnesses was not a tactical one, that it was a mistake. Reply at 12. But Mr. Lansdale's affidavit does not demonstrate that his decision was based on oversight, neglect or mistake, that he was uncertain about the law that applied to sentencing proceedings or whether he could call witnesses or request a continuance in order to present additional witnesses or evidence in mitigation, but rather a choice that counsel made, *i.e.*, a tactical decision, which in the 20-20 vision of hindsight, might have

been made differently. There is no evidence to the contrary. Mr. Lansdale affirmed that he "knew there were mitigating factors in Mr. Reese's favor, but [he] only prepared to address the court without presenting mitigation evidence." App 1-AB, Ex. 1, Lansdale Affidavit, ¶ 4. The evidence in the state-court record can fairly be read to support the trial court's factual determination that counsel made a strategic decision about the decision to submit to sentencing on the record before the court, including written letters, a sentencing memorandum, and the pre-sentence report.

Next, the Court must review the objective reasonableness of the state courts' ruling that counsel's strategic decision fell within reasonable professional judgment under *Strickland*. *See Wood*, 558 U.S. at 302–03 & n. 3. Counsel prepared and presented mitigating evidence that the court took into consideration in determining Petitioner's sentence. Petitioner has presented no evidence and no opinion from another attorney or prevailing norms from attorney guidelines that counsel's decision to present mitigating evidence in this fashion was unreasonable, and thus Petitioner has failed to demonstrate that the trial court's ruling that counsel's performance did not constitute deficient performance was objectively unreasonable. *See Matylinsky v. Budge*, 577 F.3d 1083, 1092 (9th Cir. 2009) (finding that defendant presented no evidence of unreasonableness that could satisfy "heavy burden" of proving that trial strategy was deficient).   Because Petitioner fails to satisfy both components of the *Strickland* test, his claim fails.

**2.**     *Due Process and Right to Confrontation*[7]

**a.     Grounds Four and Five**

Petitioner asserts in Ground Four that the unsworn testimony by numerous "victim" witnesses at sentencing violated Petitioner's rights to due process and confrontation. Petitioner argues that Arizona law mandating that the court "shall" consider victim impact evidence is in conflict with Supreme Court precedent limiting the relevancy of retribution as a factor in noncapital sentencing, and thus violates Petitioner's Fourteenth Amendment Due Process rights.

---

[7] Because the arguments and assertions presented in Grounds Four and Five overlap considerably, the Court addresses both grounds for relief together.

In Ground Five, Petitioner asserts that the trial court relied on an improper aggravating factor based on the unconstitutionality of victim impact evidence; the people that spoke at sentencing were not actually "victims"; the aggravating factors were not noticed; and the aggravating factors were not proven by any burden. (Petition, at 20 & n.6.)

Arizona Rule of Criminal Procedure 39 provides that a victim has the "right to be heard" at sentencing and can exercise this right "by appearing personally" at  or where legally permissible and in the discretion of the court, by submitting a written statement, an audiotape or videotape." Ariz.R.Crim.P. 39(a), (b)(7). The Arizona Constitution provides that "[t]o preserve and protect victims' rights to justice and due process, a victim of crime has a right ... [t]o be heard at any proceeding involving a post-arrest release decision, a negotiated plea, and sentencing." Ariz. Const. § 2.1(A)(4). Moreover, in any proceeding in which the victim has the right to be heard, "the victim's right to be heard is exercised not as a witness, the victim's statement is not subject to disclosure to the state or the defendant or submission to the court and the victim is not subject to cross-examination." A.R.S. § 13-4426.01. The defendant shall, however, "be afforded the opportunity to explain, support or deny the victim's statement." *Id.*

The trial court's consideration of victim impact statements pursuant to Arizona Rule of Criminal Procedure 39 and the Arizona Constitution was a matter of state law. Petitioner's allegation that the trial court erred in allowing, under the relevant state law, statements from people who did not fit the statutory definition of "victims" (*see* Petition 20 n.6) and failed to give proper notice of these statements as aggravating factors, pursuant to state law (*see id.* at 20), are claims that are not cognizable on federal habeas corpus review. *See* 28 U.S.C. § 2254; *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *Jackson v. Ylst*, 921 F.2d 882 (9th Cir. 1990) (federal court has no authority to review state application of state law); *Miller v. Vasquez*, 868 F.2d 1116, 1118–19 (9th Cir. 1989) (refusing to consider alleged errors in violation of state sentencing law).

As to Petitioner's claims that the sentencing proceeding violated due process and was in violation of Petitioner's right to confrontation, these claims are not supported by

clearly established federal law and thus Petitioner is not entitled to habeas relief. To the extent Petitioner is asserting that the victims' statements violated the Confrontation Clause of the Sixth Amendment, Petitioner's claim lacks merit. A state court's decision is not contrary to or an unreasonable application of Supreme Court precedent unless that precedent "squarely addresses the issue" or gives a "clear answer to the question presented" in the case before the state court. *Wright v. Van Patten*, 552 U.S. 120, 125–26 (2008); *see also Carey v. Musladin*, 549 U.S. 70, 77 (2006); *John–Charles v. California*, 646 F.3d 1243, 1248 (9th Cir. 2011) (explaining that the allegedly contravened Supreme Court precedent must be "closely on point"). In other words, "when a state court may draw a principled distinction between the case before it and Supreme Court caselaw, the law is not clearly established for the state-court case." *Murdoch v. Castro*, 609 F.3d 983, 991 (9th Cir. 2010) (en banc).

The Sixth Amendment protects the right of the accused "to be confronted with the witnesses against him" "[i]n all criminal prosecutions." U.S. Const. Amend. VI. The Supreme Court has held that the government cannot introduce out-of-court testimonial evidence against a defendant in a criminal trial unless the declarant is unavailable at trial and the defendant had a prior opportunity for cross-examination. *Crawford v. Washington*, 541 U.S. 36 (2004). In discussing pre-trial rights, the Supreme Court has stated that "the right to confrontation is a trial right*." Pennsylvania v. Ritchie*, 480 U.S. 39, 52 (1987). The Confrontation Clause does not apply to sentencing proceedings. *See United States v. Petty*, 982 F.2d 1365, 1369 (9th Cir.), *amended by* 992 F.2d 1015 (9th Cir. 1993); *see also United States v. Williams*, 41 F.3d 496, 499-500 (9th cir.1994) ("A sentencing judge may consider hearsay evidence without running afoul of the Confrontation Clause ...."). Petitioner does not cite, and this Court has not found, any clearly established law holding that the right to confront witnesses under the Sixth Amendment is a sentencing right. Thus, the sentencing court's consideration of the victims' statements during the sentencing proceeding does not raise a confrontation rights issue. There is no indication, moreover, that Petitioner actually requested, and was denied the opportunity to cross-examine any of the victims who were heard at sentencing.

Because Petitioner did not have a Sixth Amendment right to cross-examine the victims during the sentencing proceeding, the State court's rejection of Petitioner's Confrontation Clause claim was not contrary to, or an unreasonable application of, clearly established federal law. 28 U.S.C. § 2254; *Williams*, 529 U.S. at 412–13.

Next, Petitioner asserts that the use of victim impact statements violates a defendant's Fourteenth Amendment Due Process rights. Petitioner relies on *Payne v. Tennessee*, 501 U.S. 808 (1991). In *Payne*, the Supreme Court found that the introduction of victim impact statements in capital sentencing proceedings does not *per se* violate the Constitution. *Id.* at 827. The Court in *Payne* overruled to some extent its earlier decision in *Booth v. Maryland*, 482 U.S. 496 (1987), which found the admission of victim impact testimony at a capital sentencing constituted a *per se* Eighth Amendment violation, but left in place the prohibition on opinions from family members about the crime, the defendant, and the appropriate sentence. *Payne*, 501 U.S. at 830 n.2. These cases specifically address the admissibility of victim impact evidence at a capital sentencing, prohibiting certain information on the grounds that it would lead a jury to impose the death sentence in an arbitrary and capricious manner. *Booth*, 482 at 502–03. The holdings in *Payne* and *Booth* have no bearing on the issue presented here, which concerns the receipt of victim impact information in the context of a noncapital sentencing proceeding. *Accord United States v. Santana*, 908 F.2d 506 (1990) (noting *Booth* decision limited to capital sentencings and allowing use of victim impact statement at sentencing in noncapital federal criminal sentencing).

In a capital case, the Ninth Circuit recently recognized another "principled distinction" between *Payne* and *Booth*, which involved the jury's consideration of victim impact evidence, and the issue presented in this case, the presentation of victim impact evidence to a judge[8], and confirmed the conclusions reached in a previous case that the concern expressed in *Booth*, that victim impact statements would "inflame the jury" is

---

[8] Pursuant to Arizona law at the time, the judge held presentencing and sentencing hearings to determine whether a death sentence was supported by an aggravating circumstance and whether there were mitigating circumstances sufficiently substantial to justify leniency. *Gulbrandson*, 738 F.3d at 983.

"not the same when … a judge does the sentencing." *Gulbrandson v. Ryan*, 738 F.3d 976, 996 (9th Cir. 2013) (citing *Rhoades v. Henry*, 638 F.3d 1027 (9th Cir. 2011)). The Ninth Circuit concluded that it cannot be said that the Arizona Supreme Court unreasonably applied clearly established federal law in denying Gulbrandson's Eighth Amendment claim because there is no Supreme Court case squarely addressing the issue whether a judge is barred from consideration of such victim impact evidence. *Id.*

Moreover, there is no evidence that the state courts misapplied the law and improperly considered the wishes of victims when it imposed sentence. Petitioner was sentenced by a judge, not a jury, and "[t]rial judges are presumed to know the law and to apply it in making their decisions." *Walton v. Arizona*, 497 U.S. 639, 653 (1990), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002). Thus, although Arizona law requires the court to consider the evidence and opinions of the victim's immediate family in an aggravation or mitigation proceeding, A.R.S. § 13-701(G), it does not override the judge's obligation not to consider inadmissible evidence. When victim statements include improper evidence or argument, "in the absence of any evidence to the contrary, [the Court] must assume that the trial judge properly applied the law and considered only the evidence he knew to be admissible." *Gretzler v. Stewart*, 112 F.3d 992, 1009 (9th Cir. 1997) (citing *Walton*, 497 U.S. at 653).

The sentencing court, over Petitioner's objection to the number of people that were going to testify on the victim's behalf, permitted the people who had been noticed to speak, specifically stating that "I can assure you that it's not going to change my mind one way or the other, what sentence I impose. I understand that they're all very upset. I made up my mind what I'm going to do, but I think it is important for them to be able to speak." App. 4A at 8. Following the presentation of the victims' statements, counsel for Petitioner requested that the Court consider the victim impact evidence "as it should be considered, as an aggravating factor under 13-702[(C)]." App. 4A at 33. This is precisely what that sentencing court did. In stating its findings, the sentencing court did not find any impermissible aggravating factor based on the victims' statement, rather finding as an aggravating factor the emotional and financial harm to the decedent's survivors,

factors to which Petitioner did not object. *Id.* at 37; *see also* A.R.S. 13-702(C) (exception for court finding of aggravating factors under A.R.S. § 13-701(D)) and A.R.S. § 13-701(D)(9)(the court shall consider as an aggravating circumstance the suffering of physical, emotional or financial harm of the victim's immediate family if the victim has died as a result of the conduct of the defendant). Petitioner has not rebutted the presumption that the sentencing court considered only appropriate factors in sentencing Petitioner. *See Gretzler*, 112 F.3d at 1009. Because Petitioner does not show that the State courts unreasonably applied any clearly established Supreme Court authority in denying his claims, it must fail on federal habeas review. 28 U.S.C. § 2254(d); *Williams*, 529 U.S. at 412–13.

## III.    Certificate of Appealability

In the event Petitioner appeals from this Court's judgment, and in the interests of conserving scarce resources that otherwise might be consumed drafting an application for a certificate of appealability to this Court, the Court on its own initiative has evaluated the claims within the Petition for suitability for the issuance of a certificate of appealability. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002).

Rule 22(b) of the Federal Rules of Appellate Procedure provides that when an appeal is taken by a petitioner, the district judge who rendered the judgment "shall" either issue a certificate of appealability ("COA") or state the reasons why such a certificate should not issue. Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether the court's procedural ruling was correct. *Id.*

Upon review of the record in light of the standards for granting a certificate of appealability, the Court concludes that a certificate shall not issue as the resolution of the petition is not debatable among reasonable jurists and does not deserve further proceedings.

Accordingly,

IT IS ORDERED as follows:

(1)     Petitioner's § 2254 habeas petition (Doc. 1) is DENIED and this case is DISMISSED with prejudice.

(2)     A Certificate of Appealability is DENIED and shall not issue

(3)     The Clerk of the Court shall enter judgment accordingly and close the file in this matter.

Dated this 11th day of March, 2015.


CHARLES R. PYLE
UNITED STATES MAGISTRATE JUDGE